# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
### Assigned on Briefs December 21, 2010

## STATE OF TENNESSEE v. HENRY LEE MOORE

### Appeal from the Hamilton County Criminal Court
### Nos.  265812, 260189   Barry A. Steelman, Judge

### No. E2010-01569-CCA-R3-CD - Filed March 31, 2011

The Defendant, Henry Lee Moore, appeals the Hamilton County Criminal Court's order revoking his probation for two counts of violation of the Motor Vehicle Habitual Offender Act, a Class E felony, and one count of resisting arrest, a Class B misdemeanor, and ordering the remainder of his effective four-year sentence into execution.  We affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

JOSEPH M. TIPTON, P.J., delivered the opinion of the Court, in which JAMES CURWOOD WITT, JR., and D. KELLY THOMAS, JR., JJ., joined.

Ardena J. Garth, District Public Defender, and Richard Kenneth Mabee, Assistant District Public Defender, for the appellant, Henry Lee Moore.

Robert E. Cooper, Jr., Attorney General and Reporter; Lindsy Paduch Stempel, Assistant Attorney General; William H. Cox, III, District Attorney General; and C. Matthew Rogers, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

The Defendant pled guilty to two counts of violation of the Motor Vehicle Habitual Offenders Act (MVHO) and one count of resisting arrest.  See T.C.A. §§ 55-10-616 (2008), 39-16-602 (2010).  After a sentencing hearing, the court entered judgments on June 30, 2008, reflecting two-year sentences for each of the two MVHO violations, to be served consecutively to each other, and a six-month sentence for resisting arrest, to be served concurrently with one of the MVHO convictions.  The sentences were ordered to be served on probation. Lauren Macgillivray, the Defendant's probation officer, filed a violation report alleging that:  (1) the Defendant failed to report to the probation office from November 2008

through April 2009, and he did not comply with the sanctions imposed for the failure to report; (2) he had four positive drug screenings; and (3) he failed to submit a DNA sample. These allegations contain facts relating to violation of three rules of probation.

At the violation hearing, Ms. Macgillivray testified that the Defendant was under her probation supervision for the present cases and for a Georgia conviction. She said that on September 9, 2009, the Defendant tested positive for hydrocodone. On November 12, 2009, he tested positive for cocaine, morphine, and hydrocodone. He had positive results for morphine on December 30, 2009, and February 4, 2010. She said the Defendant claimed to have prescriptions for hydrocodone and morphine but denied using cocaine. She said that she referred the Defendant's case to the administrative review committee within the Probation Department and that the committee returned sanctions that required him to undergo a drug and alcohol evaluation and to follow its recommendations. She said the Defendant failed to follow the recommended treatment. She said the Defendant also failed to report to the probation office from November 2008 through April 2009, although she said this was before she supervised the Defendant.

Ms. Macgillivray testified that the Defendant was complying with treatment at Fortwood Mental Health Center, which included prescription medication and counseling. She said the department's in-house psychiatric social worker referred the Defendant to the Council for Alcohol and Drug Abuse Services (CADAS) but that after CADAS evaluated the Defendant, he did not return for further services because he said he could not stop using morphine and hydrocodone. She said that after the violation warrant was filed, the Defendant left her several messages claiming he was going to Tennessee Community Counseling Services (TCCS) for outpatient counseling.

On cross-examination, Ms. Macgillivray testified that she did not recall whether the Defendant told her that he had been an in-patient for mental health services at Skyline Hospital. She recalled, however, that both the Defendant and his sister, with whom the Defendant lived, left her messages stating that the Defendant had been hospitalized. She said she knew the Defendant had problems with his blood pressure. She did not know whether the Defendant was treated at Chattanooga Neurology and Headache Center. She stated the Probation Department typically required its probationers to verify their prescriptions and treatment, rather than the department requesting the information from the providers. She said she knew nothing about the nature or duration of the Defendant's mental illness. She said she did not know whether CADAS accepted patients with concurrent mental health and substance abuse problems, only that they would not accept the Defendant while he was using morphine and hydrocodone. She also stated that she did not know how long the Defendant had been receiving Social Security disability benefits and that he told her he received disability payments for chronic obstructive pulmonary disease. She acknowledged the

Defendant was attending counseling at TCCS of his own volition, not at the direction of the Probation Department. She denied any knowledge of the Defendant's having seizures or problems with his balance.

Ms. Macgillivray acknowledged that once the Defendant was transferred to her caseload, he reported as instructed and stayed in touch with her. She said that the Defendant was arrested twice during her supervision but that the charges were dismissed.

The court received as an exhibit a "Chart Cover" from Chattanooga Neurology and Headache Center. It recorded that on February 11, 2010, the Defendant was prescribed a thirty-day supply of morphine sulfate, with no refill, and a thirty-day supply of Flexeril, with two refills. It also noted that on March 11, 2010, he was prescribed a thirty-day supply of morphine sulfate, with one refill, and a thirty-day supply of Lortab, with one refill.

Mildred Debra Moore, the Defendant's sister, testified that the Defendant lived with her, that she was the payee for his Social Security benefits, and that she managed his business matters. She said the Social Security benefits were for the Defendant's mental disability. She said that he had been disabled for twenty-five years and that he had never worked during that time. She said that the disability was caused by a gunshot wound to the head and that the Defendant had seizures and balance problems.

Ms. Moore testified that the Defendant began attending classes at TCCS after he was released from Skyline Hospital in March. She said the Defendant's hospitalization at Skyline was due to "breathing and blood pressure." She said he was prescribed Seroquel, Dilantin, and Diabeta at Skyline. She also stated that Dr. Han had treated the Defendant since 2008 for his seizures and other problems from the gunshot wound. She said Dr. Cyleman prescribed medication for the Defendant's diabetes. She said that she took the Defendant to his probation meetings but that she stopped taking him in February or March when the violation warrant was issued. She said she took him to his CADAS appointment and sometimes took him to his TCCS appointments.

Ms. Moore testified that alcohol and illegal drugs were not kept in her home. She said that when the Defendant lived with her, she tried to make sure he took his medications as directed. She said the Defendant did not cause any problems during the last six months he lived with her. She said he came home on schedule and took his medications when she told him to do so. She said that if the Defendant were allowed to remain on probation, she could continue to take care of him and transport him to his probation meetings and doctors' appointments.

On cross-examination, Ms. Moore acknowledged that the Defendant had been present at a house where a warrant was served and eight syringes and two crack pipes were recovered. She said that the Defendant was there to get his clothes and that she had taken the Defendant to the house earlier in the day. She said the Defendant was not charged criminally. On redirect examination, she testified that the Defendant's belongings had been at this house and that the Defendant was not allowed now to go to the house.

The fifty-four-year-old Defendant testified that he took medication for blood pressure, diabetes, and depression. The Defendant said that he was arrested at the house where the syringes and crack pipes were found but that the charges were dismissed. He said he went to TCCS classes to address his cocaine use. He said he was prescribed morphine. The Defendant testified that he currently had a broken arm. He said he had a seizure, which caused him to lose consciousness and fall. He said that if the judge allowed him to remain on probation, he would follow his sister's instructions. He also said he would take his medication and refrain from using drugs illegally.

On cross-examination, the Defendant acknowledged that he would "go by a couple girls' house[s]." He said he did not drive to their homes if no one could take him there. He said he never drove. He admitted that he had been incarcerated twice and stated that the last time was for a driving offense. He acknowledged that driving while using morphine or cocaine would be dangerous. He explained that he was cited twice as a result of being at the home where his clothing was. He said that he was cited the first time for drug paraphernalia and that he returned to the home a second time to retrieve his belongings and was cited for criminal trespass. He identified by name the person who gave him cocaine and said he did not pay for it. He said he had only used cocaine twice while on probation.

After receiving the evidence, the trial court found that the Defendant violated his probation by using illegal drugs on the occasions cited by Ms. Macgillivray and by failing to comply with the administrative sanctions. The court stated its belief that the Defendant was unable to comply with probation. The trial court ordered the Defendant's sentences into execution.

On appeal, the Defendant argues that the trial court erred in revoking his probation. The State argues that the trial court did not abuse its discretion. We agree with the State.

A trial court may revoke probation upon its finding by a preponderance of the evidence that a violation of the conditions of probation has occurred. T.C.A. § 40-35-311(e) (2010). "In probation revocation hearings, the credibility of witnesses is to be determined by the trial judge." State v. Mitchell, 810 S.W.2d 733, 735 (Tenn. Crim. App. 1991) (citing Carver v. State, 570 S.W.2d 872 (Tenn. Crim. App. 1978)). If a trial court revokes a

4

defendant's probation, its options include ordering confinement, ordering the sentence into execution as originally entered, returning the defendant to probation on modified conditions as appropriate, or extending the defendant's period of probation by up to two years. T.C.A. §§ 40-35-308(a), (c) (2010); -310 (2010); see State v. Hunter, 1 S.W.3d 643, 648 (Tenn. 1999). The judgment of the trial court in a revocation proceeding will not be disturbed on appeal unless it appears that there has been an abuse of discretion. See State v. Williamson, 619 S.W.2d 145, 146 (Tenn. Crim. App. 1981).

The Defendant acknowledges that he "did not do everything he was supposed to do" and did other things differently than as he was required. He maintains, however, that he should be given another opportunity on probation. The record contains sufficient proof that the Defendant violated the conditions of his probation. The Defendant failed four drug tests during a period of approximately five months. Although he claimed he had been prescribed some of the medications in question, the exhibit noting the prescriptions reflected prescription dates after the four drug tests. The Defendant also admitted his cocaine use. These facts were sufficient proof to support the court's finding that the Defendant violated his probation.

The State also proved that the Defendant failed to complete the requirements imposed on him by the administrative board within the Probation Department. Ms. Macgillivray testified that as part of the administrative sanctions, the Defendant was referred by the in-house psychiatric social worker to the CADAS program and that he failed to follow the CADAS recommendations that required him to discontinue using morphine and hydrocodone. The Defendant did not offer any countervailing proof that these medications were medically necessary for him at the time he failed to follow the CADAS recommendations. The record supports the trial court's finding that the Defendant violated his probation and reflects that the trial court exercised proper discretion in revoking probation and ordering the Defendant to serve the remainder of his sentence.

In consideration of the foregoing and the record as a whole, the judgment of the trial court is affirmed.

_____
JOSEPH M. TIPTON, PRESIDING JUDGE

5